UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID JOHN LYONS,

    Plaintiff,                                        Civil Action No.
                                               05-CV-71281

vs.

                                            HON. BERNARD A. FRIEDMAN

MARK HACKEL, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, PURSUANT TO 42 U.S.C. § 1997e

This matter is presently before the Court on Defendant's Motion to Dismiss for failure to abide by the exhaustion of remedies requirement of 42 U.S.C. § 1997e and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). David Lyons ("Plaintiff") is a pro se prisoner who has filed a 42 U.S.C. § 1983 civil rights action against the Defendants, which include the Macomb County Sheriff, Macomb County, Correctional Medical Services, Inc. ("CMS"), among others. (Pl.'s Compl., 6.) Plaintiff alleges that Defendants violated his constitutional rights, by failing to protect him from the other prisoners' harassment once they learned that Plaintiff was a police informant and by failing to provide him with adequate medical care after he was punched in the eye by another prisoner.[1] (Id. at 2, 10-12, 14-15.) In addition, Plaintiff asserts that his constitutional rights were violated because his prison cell was not properly maintained and he was not supplied with hygiene supplies or legal materials. (Id. at 27-29 and Ex. G.)

Magistrate Judge Donald Scheer has submitted a Report and Recommendation, in which

---

[1] Plaintiff claims that, as a result of Defendants' inattentiveness and refusal to treat his eye injury, he is now blind in one eye. (Pl.'s Compl., 31.)

he recommends that the Court grant Defendant CMS's Motion to Dismiss. Pursuant to Eastern District of Michigan Local Rule 7.1(e)(1), the Court shall decide this motion without oral argument. After having reviewed this matter *de novo*, as required by Fed. R. Civ. P. 72(b), the Court shall grant Defendant CMS's Motion to Dismiss pursuant to 42 U.S.C. § 1997e.

## I.      HISTORY OF THE CASE

### A.      FACTUAL BACKGROUND

Plaintiff's claims relate to alleged mistreatment while he was incarcerated at the Macomb County Jail. (Mag. J. Report and Recommendation, 1; Pl.'s Resp. to Def. CMS's Mot. to Dismiss ¶ 3.)[2] Plaintiff has attached four, typewritten grievances to his Complaint. (Pl.'s Compl., Ex. G.) At the top of each page are the following titles, respectively: (1) "Failure to Protect"; (2) "Denied Medical Care"; (3) "Harassment"; and (4) "Denied Proper Hygiene and Legal Supplies." (Id.) The grievances are dated July 27, 2004, and state that they relate to alleged incidents occurring between July 23, 2004, to July 27, 2004. (Id.) A mail receipt shows that the grievances were sent to the Jail Administrator. (Id.)

In his first grievance ("Failure to Protect"), Plaintiff claims that "deputies and supervising officers refused/failed to take reasonable protective measures" to protect him from other prisoners who knew that Plaintiff was an informant. (Id.) Plaintiff states that although he "was able to keep from being assaulted . . . it was a long stressful and nerve racking ordeal."[3]

---

[2]Plaintiff is still incarcerated by the Michigan Department of Corrections; however, he is now housed at the Mound Correctional Facility in Detroit, Michigan. (Mag. J. Report and Recommendation, 1 n.1; Pl.'s Compl., 6.)

[3]Plaintiff's statement—that he "was able to keep from being assaulted"—seems to contradict many statements included elsewhere in his Complaint, where he asserts that he was attacked by other prisoners.

(Id.)  In his second grievance ("Denied Medical Care"), Plaintiff alleges that he was "denied medications" and left "in pain" for several days.  (Id.)  In his third grievance ("Harassment"), Plaintiff asserts that he was "harassed by the deputies" when he asked to be protected from the other prisoners.  (Id.)  In his fourth grievance ("Denied Proper Hygiene and Legal Supplies"), Plaintiff claims that he "was denied shampoo, razor[,] change of clothes, bedding, access to phone attorney during business hours and access to legal litigation I brought in from prison to complete prior to court."  (Id.)

Elsewhere in his Complaint, Plaintiff alleges additional unconstitutional behavior.  For instance, Plaintiff states that he did not receive proper medical attention after he was "sucker punched in the left eye" by "one of the hostile inmates" on April 2, 2003.  (Id. at 10-13.)  Plaintiff also claims that another prisoner "threatened and assaulted plaintiff in front of other jail inmates" on August 6, 2002.  (Id. at 7.)  Plaintiff states that he prepared grievances about these incidents.[4]

---

[4] Unlike the four typewritten grievances, Plaintiff only attaches a six-page, hand-scribbled note about these claims.  (Pl.'s Compl., Ex G.)  He writes that the note should "replace the grievance I mailed on 3/28/03"; however, Plaintiff does not attach the previous grievance.  (Id.)  The partially illegible note requests that Plaintiff be separated from one of the other prisoners.  Plaintiff states that he has not been adequately protected and that criminal charges should have been filed against the other prisoner.  Further, Plaintiff adds a "newly added issues" section at the end of the scribbled note.  In that addendum, he alleges that he was attacked by other prisoners and that jail personnel did not properly protect him.

Although the note includes the Jail Administrator's name at the top of the page and the date of April 20, 2003, Plaintiff submits nothing to show that the scribbled note was even mailed.  It should also be noted that the hand-scribbled note refers to incidents that allegedly occurred between one and two years before the alleged incidents in the typewritten grievances; thus, it appears that the hand-scribbled note is addressing separate grievances from those that were the focus of Plaintiff's typewritten grievances.

### B. PROCEDURAL HISTORY

Plaintiff filed his Complaint on April 1, 2005. He then filed an Amended Complaint on July 21, 2005. Defendants filed Answers to the Amended Complaint. Defendant Correctional Medical Services, Inc., ("CMS") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. 1997e on September 27, 2005.[5] Plaintiff filed his Response to Defendant CMS's Motion on September 21, 2005. Defendant CMS filed its Reply on October 4, 2005.

The matter was referred to Magistrate Judge Donald Scheer, who issued his Report and Recommendation on October 17, 2005. Magistrate Judge Scheer recommended that this Court grant Defendant CMS's Motion to Dismiss based on Plaintiff's "failure to exhaust available administrative remedies." (Mag. J. Report and Recommendation, 1.) On October 31, 2005, Plaintiff filed his Objection to the Magistrate Judge's Report and Recommendation. On November 9, 2005, Defendant CMS filed its Response to Plaintiff's Objection to the Magistrate Judge's Report and Recommendation.

## II. DEFENDANT CMS'S MOTION TO DISMISS

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2003). Section 1997e serves as a screen to weed out and eliminate frivolous or unsubstantiated prisoner claims. See Brown v. Toombs, 139 F.3d 1102, 1103 (6th Cir. 1998) (stating that "[p]rior to the

---

[5] Defendant CMS originally filed an incomplete Motion to Dismiss on August 29, 2005. This explains the discrepancy between the dates of Defendant CMS's Motion to Dismiss and Plaintiff's Response.

enactment of the statute, no significant incentives existed to deter the filing of state prison petitions raising insubstantial issues, and so in federal courts each year prisoners file thousands of petitions and take thousands of appeals"); Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999) (stating "[s]uch administrative review, along with a record of the administrative decision, is helpful to federal courts in weeding out the frivolous prisoner cases from the ones that may have merit so that they can concentrate on the latter").  Thus, the "heightened pleading standard permits federal courts to determine whether the claim can be decided on the merits, without inefficiently expending judicial resources on evidentiary hearings and responsive pleadings." Baxter v. Rose, 305 F.3d 486, 488 (6th Cir. 2002).  See also Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000) (same).

The PLRA requires that "prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies."[6]  Brown, 139 F.3d at 1104.  In order to show exhaustion of all available administrative remedies, the Sixth Circuit instructs that "[a] prisoner should attach to his § 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint."  Id.

Here, Plaintiff has not attached the required documentation.  Plaintiff has not shown that he carried the grievances through all three steps of the internal grievance process.  The complete

---

[6]In the case of a mixed complaint, which contains both unexhausted and exhausted claims, the Sixth Circuit recently joined "the Tenth and Eighth Circuits in holding that *total exhaustion* [of all claims] is required under the PLRA."  Bey v. Johnson, 407 F.3d 801, 806 (6th Cir. 2005) (emphasis added).  See id. at 805 (stating that "the PLRA requires a complete dismissal of a prisoner's complaint when that prisoner alleges both exhausted and unexhausted claims").  Thus, if a complaint includes exhausted and unexhausted grievances, a court should dismiss the entire complaint, leaving the plaintiff to exhaust the unexhausted claims and then refile the complaint.

internal grievance process consists of the prisoner's filing a grievance and the prison's filing a response (Step I); the prisoner's filing an appeal of the Step I decision and the prison's filing a response (Step II); and the prisoner's filing an appeal of the Step II decision and the prison's filing a response (Step III).  (Def. CMS's Mot. to Dismiss, Ex. B at 3-6.)  Plaintiff has not shown that he proceeded through these required steps of the grievance-and-appeal process.  In fact, Plaintiff concedes that he "advised [Defendants] that complete & additional grievances and evidence would be presented and submitted or amended to his claim at the time [he filed his Complaint.]"  (Pl.'s Resp. to Def. CMS's Mot. to Dismiss ¶ 27.)  Incomplete or partially exhausted grievances are not sufficient to demonstrate the total exhaustion of available administrative remedies.

It should be noted, though, in his Response to Defendant CMS's Motion to Dismiss, Plaintiff does attach what appears to be a Step I grievance form.  (Id. at Ex. B.)  However, this is not sufficient to show total exhaustion of the available administrative remedies, for Plaintiff not only failed to attach this grievance form to his Complaint, but he also did not provide grievance forms for Step II or Step III.[7]  Also, Plaintiff's attachment of this Step I grievance form—filed one month before he filed his four typewritten grievances—shows that he was aware that a formal grievance form and procedure existed.  Although typewritten grievances could be acceptable, the point here is that Plaintiff was aware of the prison's grievance forms and the

---

[7]It should also be noted that this Step I grievance form was filed on June 25, 2004; however, it pertains to alleged violations that began occurring on May 1, 2003.  Under the Michigan Department of Corrections Policy Directive, it is required that a prisoner file a grievance within "five business days after attempting to resolve a grievable issue with staff." (Def. CMS's Mot. to Dismiss, Ex. B at 4.)  Plaintiff's grievance seems to be late, given the prison's clearly articulated grievance procedures.

required steps in the grievance process.

There are, though, two instances where a plaintiff can show exhaustion without attaching copies of all the administrative decisions concerning a grievance.  First, the Sixth Circuit allows a prisoner to show exhaustion of administrative remedies "in the absence of written documentation, [by] describ[ing] with specificity the administrative proceeding and its outcome."  Knuckles El, 215 F.3d at 642.  This language has lead the Sixth Circuit to hold that where a plaintiff has provided sufficient specificity as to the administrative grievance filings and proceedings, a "lack of documentation is thus not fatal" to a claim.  Boyd, 380 F.3d at 995.  In other words, "[c]ourts will also consider as evidence of exhaustion a specific description of 'the administrative proceeding and its outcome.'"  Smiley v. Smith, No. Civ. 05-10065-BC, 2005 WL 2417070, at *3 (E.D. Mich. Sept. 30, 2005) (quoting Knuckles El, 215 F.3d at 642).  If a plaintiff does not provide sufficient specificity to "make a sufficient allegation of exhaustion in their initial complaint, [that plaintiff will] not be allowed to amend his complaint to cure the defect." Baxter, 305 F.3d at 489.  However, "[i]f the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement," as long as the statute of limitations has not expired.  Id.  See Boyd v. Corrs. Corp. of Am., 380 F.3d 989, 994 (6th Cir. 2004) (stating that "[a] dismissal under § 1997e should be without prejudice").

Second, the Sixth Circuit has also "conclude[d] that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."  Boyd, 380 F.3d at 996.  For instance, in Boyd, the Sixth Circuit found that a plaintiff exhausted all administrative remedies when he "specifically alleged that (1) he submitted a grievance form by

7

giving it to a corrections officer, (2) the grievance covered 'the events of the evening of August 11, 1998,' (3) the grievance was delivered to the Grievance Chairperson . . . and (4) *prison officials totally failed to respond to the grievance*." Id. (emphasis added).  The grievance was considered to be exhausted, even though prison officials had not responded.  Thus, it becomes evident that a plaintiff can show exhaustion of his administrative remedies if he provides sufficient specificity regarding the grievance steps, or if prison officials do not respond in a timely manner to the grievances.

Here, Plaintiff does not satisfy either of these two ways to show total exhaustion of the available administrative remedies.  First, he has not provided descriptions of sufficient specificity about his grievance filings and the resulting administrative decisions.  Second, he has not shown that prison officials completely failed to respond to his grievances.

As for descriptions of sufficient specificity, a grievance is not sufficient if it does not adequately identify the defendants.  Section 1997e's "requirement that a prisoner file a grievance against the person he ultimately seeks to sue" serves to ensure that "the prison administrative system has a chance to deal with claims against prison personnel before those complaints reach federal court."  Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001).  See Freeman v. Francis, 196 F.3d 641, 644 (6th Cir. 1999) (stating "the importance of using the prison grievance process [is] to alert prison officials to problems").

Plaintiff does not name any of the Defendants in his typewritten grievances.  Plaintiff only refers to the alleged offenders as "deputies."  (Pl.'s Compl., Ex. G.)  In fact, Plaintiff makes *no reference at all* to several of the Defendants included in the title of his Complaint.  Under the Michigan Department of Corrections Policy Directive, it is required that "[d]ates, times, places

8

and names of all those involved in the issue being grieved are to be included." (Def. CMS's Mot. to Dismiss, Ex. B at 4.) Plaintiff fails to include most of this information.[8] Such a failure is exactly what the PLRA seeks to prevent, for such a grievance does not provide enough details for prison officials to internally resolve the alleged problems.

Plaintiff blames the incompleteness of his Complaint on Defendants and argues that they have not responded to his grievances. (Pl.'s Resp. to Def. CMS's Mot. to Dismiss ¶ 30.) As the Sixth Circuit has explained, administrative remedies can be considered exhausted if "prison officials *totally failed* to respond to the grievance." Boyd, 380 F.3d at 996 (emphasis added). Similarly, the Michigan Department of Corrections Policy Directive states: "If the grievant is dissatisfied with the Step I response, *or does not receive a timely response*, s/he may appeal to Step II. If the grievant is dissatisfied with the Step II response, *or does not receive a timely response*, s/he may appeal to Step III." (Def. CMS's Mot. to Dismiss, Ex. B at 3 (emphasis added).) This is instructive, for it shows that if Plaintiff received no response at Step I, he should have then appealed to Step II; if he received no response at Step II, he should have then appealed to Step III. Plaintiff can only show that he has fully exhausted the available administrative remedies by attaching those documents—or at least a specific description of the grievances and responses, or lack of responses—to the Complaint.

Plaintiff seems to be talking out of both sides of his mouth. While Plaintiff asserts that

---

[8]Two of Plaintiff's typewritten grievances are only seven to eight lines in length. In addition to not specifically identifying the Defendants, the grievances do not provide sufficient specificity about the alleged occurrences themselves. For instance, Plaintiff's third grievance ("Harassment") states that Plaintiff was "harassed by the deputies"; however, Plaintiff does not provide details about what the harassment entailed, where the harassment occurred, or what happened. (Pl.'s Compl., Ex. G.)

9

Defendants failed to respond to his grievances, he also admits that prison officials *have responded* to his grievances. For instance, in response to his requests to be separated from the other prisoners because of harassment, Plaintiff states that he "was verbally advised that he could not be placed in any other cell location." (Pl.'s Compl., 14.) Further, Plaintiff states that "Defendant[] Michelle Sanborn . . . handled and responded to most of plaintiff's grievances, yet refused/failed to take corrective action at any time."[9] (Id. at 21.) Moreover, Plaintiff provides a letter from the Jail Administrator that states: "Please be advised that I have been out of town and forwarded your grievance to the jail command staff. It is my understanding that Sgt. Kevin Hartley responded to your prior grievance." (Pl.'s Objection to Mag. J. Report and Recommendation, Ex. G.) The issue seems to be less about whether the prison officials responded to his grievances and more about Plaintiff's displeasure with the decisions taken by prison officials *in response* to his grievances.

In sum, Plaintiff fails to provide the necessary documentation—or at least a more specific description of each Defendant's involvement and the administrative outcomes. This would leave the Court to conduct its own evidentiary investigation. Such an investigatory fishing trip would grind against the very purpose behind the PLRA, which seeks to increase the efficiency and dependability by which courts can weed out frivolous and unsubstantiated claims from the beginning. Therefore, the entire Complaint should be dismissed without prejudice, so as to give

---

[9]According to the Macomb County Jail Prisoner Guide, "[a] written answer to the grievance will be given within ten (1) [sic] days of receipt." (Def. CMS's Mot. to Dismiss, Ex. A at 5.) It is unclear from the record whether Plaintiff received mostly written or oral responses from the prison officials.

Plaintiff the chance to gather the required documentation.[10]  Plaintiff can then refile the Complaint to show total exhaustion of those claims, as long as they are not barred by the statute of limitations.

## III.    CONCLUSION

Based upon the record established and documentary evidence presented, the Magistrate Judge was correct in recommending that this Court grant Defendant CMS's Motion to Dismiss. For the reasons stated above, the Court accepts and adopts the Magistrate Judge's finding that Plaintiff's Complaint should be dismissed because Plaintiff has failed to abide by the exhaustion of remedies requirement under 42 U.S.C. § 1997e.  Accordingly,

IT IS ORDERED that the Magistrate Judge's Report and Recommendation of October 17, 2005, is accepted insofar as it is consistent with the rulings indicated above.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is granted, pursuant to 42 U.S.C. § 1997e.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed without prejudice.

---

[10]Due to the Court's decision that Plaintiff's Complaint should be dismissed for failure to abide by the exhaustion of remedies requirement under 42 U.S.C. § 1997e, the Court finds it unnecessary to address Defendant's contention that Plaintiff's Complaint should also be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

...

IT IS FURTHER ORDERED that all pending motions are denied as moot (Docket Entry Numbers 22, 26 and 29).

\_\_\_\_\_s/Bernard A. Friedman\_\_\_\_
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: March 8, 2006
       Detroit, Michigan